## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TORSA TUNSTALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER: |
| | ) | |
| | ) | 1:20-cv-00265 |
| | ) | |
| SPIRE GULF, INC., | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### I.   INTRODUCTION

This is an action for legal and equitable relief to redress the discrimination based on gender, discrimination based on race, and the retaliation Torsa Tunstall experienced while working for Defendant.

### II.   JURISDICTION

1.   The jurisdiction of this Court is invoked pursuant to the Act of Congress known as 28 U.S.C. §§1331, 1334(4), 2201 and 2202, 42 U.S.C. §2000e et seq.  This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. §2000e et seq., the "Civil Rights Act of 1991" and 42 U.S.C. §1981. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. §2000 et seq. providing for injunctive and other relief against race discrimination in employment.

2.   The Plaintiff timely filed her charge of alleging gender discrimination, race

1

discrimination, and retaliation with the Equal Employment Opportunity Commission (EEOC). The Plaintiff further filed her discrimination suit within 90 days after receipt of her right-to-sue letter issued from the EEOC.

**III.   PARTIES**

3. Plaintiff, Torsa Tunstall, is an African-American female citizen of the United States and a resident of the State of Alabama. At all times relevant to this lawsuit, the Plaintiff was employed by the Defendant at its location in Mobile, Alabama.

4. Defendant, Spire Gulf, Inc., (hereinafter "Spire" or "Defendant"), is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, by the "Civil Rights Act of 1991," 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981. Defendant services the gas distribution system in Mobile, Alabama and has an office location in Mobile.

**IV.   FACTS**

5. Plaintiff re-alleges and incorporates by reference paragraphs 1-4 with the same force and effect as if fully set out in specific detail hereinbelow.

6. Torsa Tunstall became a meter reader for Mobile Gas in 2001 and performed her job well.

7. In or around 2015, Tunstall entered an apprenticeship program to become a Service Technician.

8. During her apprenticeship, Tunstall's male manager actively worked to deny her training opportunities and, when he did allow her to complete training exercises, he made sure that Tunstall's training requirements were more difficult than those male employees were required to complete.

9.  At that time, Sharon Moffatt was Tunstall's director of operations.

10. Moffatt knew about and observed first hand the gender discrimination Tunstall experienced, but Moffatt never reprimanded Tunstall's supervisor for his conduct.

11. Tunstall became a Service Technician and was the only female in the Gulf Coast region service department. Tunstall continued to perform her job well.

12. In 2016, Defendant Spire purchased Mobile Gas. The majority of the workforce in the Mobile area stayed the same.

13. In 2017, Jon Derrick Bryant, a white male, became Tunstall's immediate supervisor.

14. Throughout her employment, Tunstall observed and experienced that Bryant treated white employees better than black employees.

15. Throughout her employment, Tunstall also observed and experienced that Bryant treated Tunstall worse than her male co-workers and made derogatory comments about Tunstall based on her gender.

16. For example, Bryant told customers that Tunstall was not as good of a service technician as the male service technicians.

17. Bryant would say that customers had complained about Tunstall, but when Tunstall asked for specifics or to be shown such complaints, he never responded or provided her with actual complaint documentation. Bryant did not accuse other white, male technicians of similar conduct in group meetings.

18. After Tunstall obtained her journeyman certification, she received a pay raise.

19. Bryant did not like that Tunstall was getting paid more than her white, male co-workers regardless of the fact that many of Tunstall's white, male co-workers did not have the

certification and so were not eligible to earn as much as Tunstall. Bryant informed some of her co-workers what Tunstall's exact hourly rate was. He also indicated that he approved of these male co-workers complaining to another white, male supervisor, Wayne Castanos, that they were not making as much as a female. There was no mention of Tunstall's credentials, just that the men did not like making less than a female.

20. As a supervisor, Bryant could direct dispatch to send or cancel orders for service technicians.

21. During her employment, Tunstall observed on multiple occasions that Bryant would tell dispatch to cancel orders for her near the end of her shift. Bryant's actions effectively prohibited Tunstall from getting overtime work. Bryant did not do this for white, male employees.

22. Because she believed that Bryant was discriminating against her based on her gender and race, on or about September 3, 2018, Tunstall went to Spire's Human Resources Department for help. Tunstall explained her concerns about discrimination and harassment based on her gender and race, primarily based on conduct of her supervisor, Bryant.

23. Tunstall also expressed concern that Sharon Moffatt was letting supervisors and co-workers harass Tunstall and Moffatt's inaction had the effect of encouraging the discriminatory conduct.

24. Defendant told Tunstall that they would conduct an investigation.

25. On January 24, 2019, Tunstall was called into a meeting with Human Resources manager Mark LaCroix (white male), Moffatt, and Bryant.

26. LaCroix said that Tunstall's claims of harassment could not be substantiated.

27. Then LaCroix gave Tunstall a Corrective Action Notice, disciplining her for conduct

that allegedly occurred on January 9, 2019.

28. Tunstall asserts that she did not do anything on January 9, 2019 that was against company policy, procedure, or practice. However, to the extent that any action could be considered a violation of policy, procedure, or practice, Tunstall asserts that white and/or male employees regularly commit the same violations and are not disciplined.

29. On February 13, 2019, Tunstall called Bryant to let him know that she would be late to the morning meeting. He said ok and that he would notify supervisor Wayne Castanos, because Bryant was not going to be at the morning meeting.

30. Tunstall had done that in the past, and also is aware of white and/or male employees who had done that in the past and, as long as they inform their supervisors, there is no problem.

31. However, on February 25, 2019, Moffatt and Bryant disciplined Tunstall for an alleged violation of company policy, saying that Tunstall's tardiness to the February 13 meeting was 'unexcused'.

32. On February 27, 2019, after completing all open work orders in her queue, Tunstall went into her nail salon and scheduled an appointment. Tunstall set her hand and wallet on the counter and, when she left, Tunstall accidentally picked up the phone of the store owner, which was also sitting on the counter.

33. Tunstall then went to the store next door. When gathering her belongings at the second store, Tunstall realized there was a phone that was not hers. At that time, Tunstall thought someone had accidentally left it in the second store because Tunstall did not realize she had picked it up at the nail salon.

34. Tunstall left the phone with the owner of the second store.

35. Meanwhile, the nail salon owner realized that Tunstall had mistakenly picked her phone up, but did not have Tunstall's personal cell phone number without the contact information from her phone. In order to contact Tunstall, the salon owner had her son call Spire.

36. The second store owner was able to get the phone back to the nail salon owner the next day, February 28, 2019.

37. Later on February 28, a Spire representative came out to the nail salon.

38. The salon owner assured the representative that there was nothing wrong, that it was clearly an accident, and she had the phone back.

39. On March 4, 2019, Tunstall was called into the office. Aree Kirksey, a human resources employee standing in for LaCroix, told Tunstall that she was being suspended without pay pending an investigation, because a customer alleged that Tunstall stole something while in uniform.

40. More specifically, Kirksey said the company was investigating Tunstall's stealing a cell phone from a nail salon.

41. Tunstall asserts that she did not do anything on February 27, 2019 that was against company policy or procedure. However, to the extent that any action could be considered a violation of policy or procedure, Tunstall asserts that white and/or male employees regularly commit the same or similar violations and are not disciplined.

42. Tunstall went to the EEOC and initiated a charge of discrimination. However, at the time she spoke with the EEOC, she did not know she would eventually be terminated.

43. On April 4, 2019, Defendant terminated Tunstall.

44. On April 11, 2019, before Tunstall could amend or update her charge of discrimination to include her termination, the EEOC issued a Right to Sue Notice.

45. On June 13, 2019, Tunstall filed a new EEOC charge alleging that her termination was unlawful discrimination based on race, gender, and retaliation.

46. Tunstall also pursued a Union grievance regarding her termination.

47. At the Union arbitration hearing the Company stated that the but for reason for Tunstall's discharge was the "unauthorized taking of another's property, while in Company uniform", i.e., theft.

48. The Union Arbitrator awarded Tunstall reinstatement to her former position, with benefits and seniority, on November 21, 2019. However, the Arbitrator did not award backpay.

49. On February 20, 2020, EEOC issued Right to Sue.

V. CAUSES OF ACTION

A. RACE DISCRIMINATION

50. The Plaintiff re-alleges and incorporates by reference paragraphs 1-49 with the same force and effect as if fully set out in specific detail hereinbelow.

51. Tunstall is pursuing this claim pursuant to Title VII and 42 U.S.C. 1981.

52. Tunstall was treated differently on account of her race in regards to discipline, work/job assignments, and termination.

53. The Defendant has no legitimate non-discriminatory reason for its conduct.

54. Any asserted reason for Defendant's conduct is a pretext for race discrimination.

55. Because of such conduct, the Plaintiff has suffered loss of income and employment benefits as well as severe emotional distress, embarrassment, and humiliation.

56. The Defendant's actions were willful, with malice, and with reckless disregard.

57. The Plaintiff seeks to redress the wrongs alleged herein and this suit is her only means

of securing adequate relief. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

      **B.**    **GENDER DISCRIMINATION**

58. The Plaintiff re-alleges and incorporates by reference paragraphs 1-49 with the same force and effect as if fully set out in specific detail hereinbelow.

59. Tunstall is pursuing this claim pursuant to Title VII.

60. Tunstall was treated differently based on her gender in regards to discipline, work/job assignments, and termination.

61. The Defendant has no legitimate non-discriminatory reason for its conduct.

62. Any asserted reason for Defendant's conduct is a pretext for sex discrimination.

63. Because of such conduct, the Plaintiff has suffered loss of income and employment benefits as well as severe emotional distress, embarrassment, and humiliation.

64. The Defendant's actions were willful, with malice, and with reckless disregard.

65. The Plaintiff seeks to redress the wrongs alleged herein and this suit is her only means of securing adequate relief. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

      **C.**    **RETALIATION**

66. The Plaintiff re-alleges and incorporates by reference paragraphs 1-49 with the same force and effect as if fully set out in specific detail hereinbelow.

67. The Plaintiff engaged in protected activity by complaining internally about

discrimination based on race and gender which she was experiencing from her supervisors.

68. After the Plaintiff complained internally about discriminatory treatment based on race and gender, she continued to experience discrimination with respect to discipline and termination.

69. Plaintiff was terminated in retaliation for her prior protected activity, including her complaints to human resources.

70. The Plaintiff was subjected to unequal treatment by the Defendant in retaliation for opposing unlawful employment practices.

71. As a result of Defendant's conduct, Plaintiff suffered an adverse action.

72. A causal connection exists between Plaintiff's protected activity and the adverse action.

73. The Defendant has no legitimate non-discriminatory reason for its conduct.

74. Any asserted reason for Defendant's conduct is a pretext for retaliation.

75. Because of such conduct, Plaintiff has suffered loss of income and employment benefits as well as severe emotional distress, embarrassment, and humiliation.

76. The Defendant's actions were willful, with malice and with reckless disregard for Plaintiff's rights.

77. The Plaintiff seeks to redress the wrongs alleged herein and this suit for injunctive and declaratory judgment is her only means of securing adequate relief. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this

action and after trial:

1.	Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, by the "Civil Rights Act of 1991," 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981 through U.S.C. §1983.

2.	Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991," 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981 through U.S.C. §1983.

3.	Enter an order requiring the Defendant to make the Plaintiff whole by awarding back-pay (plus interest), punitive damages, compensatory damages, nominal damages, declaratory relief, injunctive relief, and benefits.

4.	The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

Respectfully submitted,

*/s/ Rocco Calamusa, Jr.*
Rocco Calamusa, Jr. (asb-5324-a61r)
Rachel L. McGinley (asb-1892-a64m)
WIGGINS, CHILDS, PANTAZIS,
　FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama  35203
Telephone: (205) 314-0500
rcalamusa@wigginschilds.com
rmcginley@wigginschilds.com

                                          *Attorneys for Plaintiff*

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.**

                                        */s/ Rocco Calamusa, Jr.*
                                        OF COUNSEL

**Plaintiff requests this Honorable Court to serve via certified mail upon the Defendant the following: Summons, Complaint.**

**Defendant's Address:**
Spire Gulf, Inc.
c/o Incorp Services, Inc., Reg. Agent
4142 Carmichael Road
Montgomery, Alabama 36106

                                        */s/ Rocco Calamusa, Jr.*
                                        OF COUNSEL